**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

JANICE A. BARTLESON,

      Plaintiff,                                      CASE NO.:

v.

MIAMI-DADE COUNTY SCHOOL BOARD

      Defendant,

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, Janice A. Bartleson, by and through her undersigned counsel and hereby, brings this employment discrimination action against Defendant, MIAMI-DADE COUNTY SCHOOL BOARD and in support thereof states as follow:

### INTRODUCTION

1.      This is an action for declaratory and injunctive relief and damages arising out of Defendant's development, procurement, installation, and maintenance of websites and computer software that are inaccessible to Plaintiff in violation of the Americans with Disabilities Act, ("ADA") 42 U.S.C. §§ 12101, 12132 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Florida Educational Equity Act, F.S.A. § 1000.05 *et seq.*, and the Florida Civil Rights Act, F.S.A. 76.01 *et seq*.

2.      Miami-Dade County School Board ("the Board") is the governing body of Miami-Dade County Public Schools ("MDCPS"). The Board directs, controls, and supervises the operation and administration of all schools, programs and activities within the MDCPS system.

3.      Plaintiff Janice A. Bartleson, Ph.D. ("Dr. Bartleson") is an employee of MDCPS; she serves as a counselor and emotional/behavioral disabilities ("E/BD") clinician.

4.      Dr. Bartleson is blind. She uses screen access software, Jobs Access with Speech ("JAWS"), to interact with websites and computer programs.

5.      Dr. Bartleson has been an MDCPS employee for 26 years. The Board, through its executive leadership, is aware of her disability and need for screen reader-compatible technology.

6.      Dr. Bartleson is qualified to perform the essential functions of her job. She holds a doctorate degree in clinical psychology. She receives strong reviews and yearly contract renewals.   In 2016, the MDCPS ADA District Consultative Committee ("ADA-DCC") stated that Dr. Bartleson "continue[s] to be a qualified individual within the meaning of the Americans with Disabilities Act."

7.      As a qualified person with a disability, Dr. Bartleson is entitled to be free from discrimination by the Board, may not be denied the benefits, services, programs, or activities that the Board provides, and is entitled to meaningful access to such.

8.      MDCPS utilizes several software applications and web platforms that are not compatible with screen readers used by blind individuals to access computers.  As a result, Dr. Bartleson is unable to utilize these critical tools without the assistance of a sighted co-worker. She is also unable to seek out or apply for promotions for which she is eligible and interested.  In fact, when Dr. Bartleson recently expressed a desire to apply for a new position, she was discouraged from submitting an application due to the inaccessible technology that she would need to use for the job.

9.      When computer programs and online applications and platforms are properly coded to interact with screen access software and other assistive technology, the features, functions and content of those programs are accessible to blind individuals like Dr. Bartleson. When they are not so properly coded, blind people are completely shut out from vital information.

10.      Dr. Bartleson has brought the accessibility barriers described in this Complaint to the Board's attention. The Board, however, has ignored her concerns.

11.      By using criteria and methods of administration to consistently and repeatedly develop, procure, use, and maintain inaccessible technology, the Board is discriminating against Dr. Bartleson by making it impossible for her to participate equally and advance in her career.

12.      It would not be unduly burdensome for the Board to adopt methods of administration that would foster inclusivity and equal access for blind employees, nor would the Board need to fundamentally alter its nature to ensure that accessible technology is developed, procured, maintained or used.  To ensure Dr. Bartleson is not excluded from participation in and denied the benefits, services, conditions and privileges of MDCPS, including effective communication, the Board need only make reasonable modifications to its policies, practices and procedures governing the development, procurement, maintenance and use of accessible technology.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Dr. Bartleson's claims arise under Titles I and II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111, 12112, 12131, and Section 504 of Rehabilitation Act ("Section 504"), 29 U.S.C. § 794.

14.     This Court has supplemental jurisdiction over Dr. Bartleson's state law claims pursuant to 28 U.S.C. § 1367.

15.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b).

## PARTIES

16.     Dr. Bartleson is a blind educator. She has been a resident of Miami-Dade County and an employee of MDCPS for more than 25 years. She lives in Coral Gables, Florida and works as a counselor and E/BD clinician at Miami Senior High School. She is a qualified individual with a disability subject to the protections afforded under Titles I and II of the ADA 42 U.S.C. §§ 12111, *et seq*., § 12181, *et seq.,* Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, Florida Educational Equity Act, F.S.A. § 1000.05 *et seq.*, and the Florida Civil Rights Act, F.S.A. 76.01 *et seq*.

17.     Defendant Miami-Dade County School Board is the governing body of the School District of Miami-Dade County, *see* Fla. Stat. § 1001.40(a); it is the fourth largest school district in the country and organized pursuant to Section 4(a), Article IX of the Florida State Constitution and Sections 1001.371 and 1001.40 of Florida's Education Code. The Board is responsible for directing, controlling, and supervising the operation and administration of all schools within MDCPS. Fla. Const. Art. IX, § 4(b); Fla. Stat. §§ 1001.32(2), 33.

18.     The Board employs more than 33,000 people and constitutes an "employer" and "covered entity" under Title I of the ADA. 42 U.S.C. § 12111(2),(5)(A).

19.     The Board operates and delivers all K-12 educational programs, services, and activities in Miami-Dade County as part of the state system of public education. Fla. Stat. § 1001.32(1). As a local government entity, the Board is a "public entity" under Title II of the ADA. 42 U.S.C. § 12131(1)(A)-(B).

20.     The Board receives federal financial assistance through the Florida State Department of Education and thus must comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

## STATEMENT OF FACTS

21.     Dr. Bartleson has retinitis pigmentosa, a degenerative eye disease. Her vision began to deteriorate when she was an undergraduate student. By the time she was 26, she was no longer able to drive. Dr. Bartleson has been blind for more than 30 years.

22.     Dr. Bartleson's ability to see is substantially limited by her blindness.

23.     Dr. Bartleson relies on visual aids and alternative techniques to walk, read, and interact with a computer. Dr. Bartleson uses a guide dog or white cane to travel independently. To independently interact with a computer, she uses screen reader software that magnifies text and images, as well as screen reader software that translates text and images into audio format.

24.     Dr. Bartleson has never let blindness define who she is, nor has she allowed her blindness to keep her from pursuing her passion for students, particularly those who are often overlooked and in need of special education. Motivated to help students, Dr. Bartleson earned a Bachelor's degree in psychology from the University of Florida in 1979. In 1989, she earned a Ph.D. in counseling psychology with high honors from the same institution. Since 1992, Dr. Bartleson has held a Professional Educator's Certificate from the State of Florida and has been licensed as a psychologist by the State of Florida. Dr. Bartleson has also served as an adjunct professor for the past seven years at Florida International University where she teaches graduate students who are preparing to be counselors for students with disabilities.

25.     Dr. Bartleson has dedicated her professional life to public education. Two years after completing her doctorate, Dr. Bartleson applied to MDCPS for a school counselor position

because she wanted to help children become productive adults.  Since that time, she has served as a full-time school psychologist with MDCPS.

26.     Dr. Bartleson has worked at three schools in the MDCPS system. She was a counselor and clinician at South Miami Middle School for approximately ten years. She transferred to W.R. Thomas Middle School, where she worked as a counselor and clinician for the next 13 years.  In 2016, Dr. Bartleson transferred to Miami Senior High School where she continues to work as a counselor and E/BD Clinician.

27.     Dr. Bartleson provides clinical services to students with emotional disabilities. Dr. Bartleson provides individual and group counseling, crisis intervention, and conflict resolution.  She also consults with parents, teachers and staff, participates in IEP meetings, *see* 20 U.S.C. § 1414(d)(1)-(4), and reviews Behavioral Intervention Plans.

28.     Dr. Bartleson uses screen access software, JAWS, as her primary means for interacting with computer programs and online applications and platforms. JAWS translates digital content into audio output and allows Dr. Bartleson to use nonvisual keyboard inputs to navigate the site and input data into programs.

29.     The Board develops, procures, uses, and maintains computer programs and online applications and platforms that are not compatible with screen readers and thus not accessible to Dr. Bartleson.

30.     For example, the Integrated Student Information System ("ISIS") is an online digital database that contains all pertinent student information, including attendance records, student grades, health records, contact information, and student schedules. All administrators, counselors, and psychologists have access to ISIS and are required to interact with the program.

Dr. Bartleson is expected to input data into the ISIS program, create folders with database information, and produce Student Case Management Summaries.

31.     ISIS is not compatible with screen readers. As a result, Dr. Bartleson cannot perform the vast majority of the program's functions.

32.     For several years, Dr. Bartleson has talked with school officials about these accessibility problems. The school district persisted in ignoring her concerns. Dr. Bartleson has been forced to rely on others to document student progress, obtain family contact information, schedule counseling sessions, or print out reports through ISIS.

33.     The Board similarly uses a scheduling program called Aspen and a grade system called Pinnacle.  Dr. Bartleson is not able to use either because they are incompatible with screen readers.  Again, she must rely on others to use these employment tools.

34.     Similarly, the Board contracts with a private vendor for access to GoLeaps.com, a web based program that provides assessments, lessons, interventions, and other resources.  Dr. Bartleson is required to use this system to conduct assessments of her students, but cannot do so without the assistance of a sighted co-worker by her side.  Moreover, she is denied ready access to the lessons and potential intervention resources that are available to her sighted peers through the program.

35.     GoLeaps.com is not compatible with screen readers. To access the assessments, Dr. Bartleson must have a sighted person log into the program, read the questions aloud, and input her answers.  On information and belief, the lessons and interventions are scanned into the program as untagged images. As a result, a screen reader cannot translate the text into audio output.  To access such information, Dr. Bartleson must print out the lessons and have a sighted person read them to her.

36.     Dr. Bartleson told her supervisor about GoLeaps.com's accessibility problems. The Board has taken no action to work with the vendor to ensure access.

37.     MDCPS's website, www.dadeschools.net, is the main point of access for ISIS, GoLeaps.com, and most other portals. The Records and Forms tabs of www.dadeschools.net is not compatible with screen readers. As a result, Dr. Bartleson cannot use many of the forms that she needs, including but not limited to, those relating to consent, intake, student profiles, service encounters, scheduling, interviews, progress notes, and behavior intervention planning.

38.     Dr. Bartleson has also encountered barriers in accessing employee benefits. For example, most employees can register for health insurance www.dadeschools.net.  But because of accessibility barriers on that website, Dr. Bartleson is unable to do so.  She must use a sighted assistant to help her register for coverage and to perform any of the other functions available to her sighted peers.

39.     The Board's approach to procuring, using, and maintaining technology has had a negative impact on Dr. Bartleson's professional development. For example, the Board has utilized a paper-based evaluation system without regard for Dr. Bartleson's inability to access print.  Dr. Bartleson has never been able to privately review any of her evaluations before signing them, even though such documents could easily have been converted into an accessible digital format.

40.     Likewise, the Board utilizes My Learning Plan, a professional development application.  Because My Learning Plan is not compatible with screen readers, Dr. Bartleson cannot perform or use any of the program's features.

41.     On March 9, 2016, Dr. Bartleson met with a Board employee for her evaluation for the 2014-15 school year.  Employees are measured across seven performance standards and

assessed as highly effective, effective, developing/needs improvement, or unsatisfactory. Dr. Bartleson's supervisor assessed her as "highly effective" on each performance standard except for standard three, "Program Management." For that standard, Dr. Bartleson's supervisor assessed her as merely "effective." On information and belief, the "effective" rating was due to Dr. Bartleson's lack of data input, which directly resulted from the fact that she could not access the programs, applications and platforms used to complete these tasks.

42.     Dr. Bartleson has brought these accessibility barriers to her supervisors' attention. For at least two years, Robin Morrison, Dr. Bartleson's supervisor, and others serving in leadership roles at MDCPS have been aware that ISIS, GoLeaps.com, My Learning Plan, and much of the MDCPS website are not accessible. Similarly, leadership is aware that Aspen and Pinnacle are similarly inaccessible to Dr. Bartleson.

43.     By procuring, using, and maintaining inaccessible computer programs and online applications and platforms, the Board's methods of administration have precluded Dr. Bartleson from independently performing certain aspects of her job, enjoying certain benefits of her employment with the same independence and ease of use as that afforded to her sighted peers, and meaningfully taking advantage of employment benefits.

44.     The Board has similarly failed to modify its methods of administration to ensure that Dr. Bartleson is not subjected to discrimination. In the 2016-2017 school year, the Board implemented Accelify, a suite of special education management programs that are critical to the work that Dr. Bartleson performs. Accelify is not compatible with screen readers and therefore not accessible to Dr. Bartleson.

45.     The discriminatory effects of the Board's methods of administration are ongoing. Because the Board has failed to implement and/or enforce procurement policies that require

accessibility and continually acquires inaccessible products, Dr. Bartleson will continue to be unable to access information technology and other critical employment benefits.  Unlike her sighted peers, who will continue to enjoy the benefits of utilizing the website and professional software platforms whenever and wherever they are working, Dr. Bartleson will be forced to rely on others, or forgo the employment tools that she needs, and which are available to others.

46.     Dr. Bartleson's ability to pursue promotions and advancement has been limited by the District's development, procurement, use, and maintenance of inaccessible technology. All job vacancies are posted on www.dadeschools.net.  Like the "Reports and Forms" tab, the job vacancy portion of the website is not compatible with screen readers.  As a result, Dr. Bartleson cannot view announced vacancies, nor privately apply for positions in which she is interested. Dr. Bartleson has attempted to overcome these barriers and pursue opportunities for advancement.

47.     In April of 2016, Dr. Bartleson filed a request for reasonable accommodations with the ADA-District Consultative Committee (ADA-DCC).  She requested, in part, a computer with JAWS so that she could access the aforementioned programs, applications, and platforms, and explore advancement opportunities independently.   For programs, applications, and platforms that are not compatible with JAWS, she requested 1-2 hours of clerical support per week as a workaround.

48.     On April 25, 2016, Dr. Bartleson received a letter from the Assistant Superintendent of MDCPS. The letter provided, in part, the following responses:

> a.     Regarding her request for accessible technology, "the ADA-DCC recommends that you work with your immediate supervisor and the Office of Information Technology Services (ITS) to evaluate your technological needs." She was further advised to work with Claude Archer, MDCPS's Director of Instructional Staffing, and Jorge Rubio, MDCPS's Director of

Employment and Staffing to address her job advancement interests and needs.

b.       Regarding her request for clerical support, "the ADA-DCC found that request to be unreasonable since it would cause an undue hardship on the school-site."

49.       As advised, Dr. Bartleson reached out to Mr. Archer. He did not offer any support regarding job vacancies.

50.       Dr. Bartleson also reached out to Mr. Rubio. On May 27, 2016, Dr. Bartleson sent the following email:

> Every day I check my email hoping an employment opportunity will be forwarded to me. I am following up to see if you are looking for me as I requested due to my visual disability and the inaccessibility of the website. I cannot access the employment section and do not have the district connections that surely would assist this process. I continually hear about all of the retirements this year and I am very interested in a change, more administrative. I have been at the distinct disadvantage in my career fighting discrimination, usually benign and I want to move ahead like my peers. For whatever reason, my supervisor has not sent any opportunities my way.
>
> Perhaps it would be helpful for me to come in and speak to you personally and you can get the measure of me. After 25 years working for MDCPS I have a lot to offer, especially in the ESE department.

51.       In response to this email, Mr. Rubio met with Dr. Bartleson. She expressed interest in applying for certain management positions and told Mr. Rubio that accessibility barriers precluded her from searching and applying for those opportunities on her own. Mr. Rubio suggested that she work with Ms. Morrison to resolve those issues. Later, in the fall of 2016, Mr. Rubio told Dr. Bartleson of a few such positions, but none were appropriate.

52.       Dr. Bartleson told Ms. Morrison of her interest in a promotion and job advancement and renewed her complaints regarding inaccessible technology. On information and belief, Ms. Morrison took no action.

53.     Dr. Bartleson did not relent and after filing a complaint with the Office of Civil Rights, received 4 hours of clerical assistance per week.  Nevertheless, that assistance is not effective.  Her clerical assistant is often unavailable when Dr. Bartleson needs assistance.  Ad hoc sighted assistance is no substitute for mainstream access.  Had the Board chosen to acquire, use, and maintain accessible technology, Dr. Bartleson would not need to depend on a clerical assistant, nor would the Board need to provide one.

54.     Dr. Bartleson has continued to pursue promotional opportunities.  In the Fall of 2016, Dr. Bartleson met with Maria Diaz de Villegas, then-Chair of the Counseling Department at Miami Senior High School.  Ms. Diaz de Villegas was retiring at the end of that school year, and Dr. Bartleson expressed interest in her position. Feeling that Dr. Bartleson possessed the right qualifications and spirit for taking over her position, Ms. Diaz de Villegas began an ongoing dialogue with Dr. Bartleson.  As her retirement approached, the two met again. Ms. Diaz de Villegas advised that using ISIS was central to her job, because she regularly uses the program to make schedule changes, do credit recovery, and perform other key parts of the position.  Dr. Bartleson told Ms. Diaz de Villegas that ISIS was inaccessible with her screen reader, JAWS.  Ms. Diaz de Villegas expressed a profound sense of disappointment.  Without a sound solution to the ISIS accessibility barriers, Dr. Bartleson felt defeated and was ultimately deterred from applying for Ms. Diaz de Villegas' job.

55.     Because of the Board's decision to develop, procure, use and maintain inaccessible programs, applications, and platforms, Dr. Bartleson has not been given an equal opportunity for advancement.  Despite Dr. Bartleson's initiative, she remains unable to find promotional opportunities, and has been deterred from applying for such promotions.

56.     In August 2016, Dr. Bartleson filed complaints with the ADA-DCC and the MDCPS Office of Civil Rights Compliance.

57.     On December 15, 2016, Dr. Bartleson, through counsel, sought to develop a comprehensive solution with the Board and offered to engage in an alternative dispute resolution process.  The District declined to participate.

58.     On January 17, 2017, Dr. Bartleson filed a charge of disability discrimination with the EEOC.  She claimed that the Board denied her equal treatment and opportunity to apply for job openings or promotions by utilizing inaccessible software; refused to provide reasonable accommodations that were necessary for her to perform her job; and violated the ADA by utilizing methods of administration that have the effect of discriminating on the basis of disability.

59.     On January 29, 2018, the EEOC issued a Notice of Right to Sue to Dr. Bartleson. As a result, Dr. Bartleson has exhausted available administrative remedies prior to the filing of this Complaint.

60.     The Plaintiff has retained the services of Disability Independence Group and Brown, Goldstein and Levy, and has agreed to pay them a reasonable fee for their services in the prosecution of this cause, including all costs and expenses incurred in this action. Plaintiff is entitled to recover those attorneys' fees, costs and expenses from the MDCPS.

## CAUSES OF ACTION

### COUNT I

**(VIOLATIONS OF TITLE II OF THE ADA, 42 U.S.C. § 12132)**

**Using Methods of Administration That Have the Effect of Discrimination**

61.     Plaintiff, Dr. Bartleson re-alleges and incorporates herein paragraphs one though 60, as if stated herein.

62.      Dr. Bartleson is a qualified individual with a disability who meets the essential eligibility requirements to receive or participate in all of the services, programs, and activities that the Board provides to MDCPS employees and community members.

63.     The Board is a public entity that directly, or through contractual arrangements, develops, procures, maintains, and uses inaccessible computer programs and online applications and platforms.

64.     Because of the Board's development, procurement, maintenance, and use of technology that is inaccessible to Dr. Bartleson, Dr. Bartleson has been denied the opportunity to participate in or gain the same benefit from aids, benefits, and services that are available to other MDCPS employees. She has been denied opportunities for professional development and advancement that are available to her sighted peers and has not been afforded an equal opportunity to gain the same benefit or reach the same level of achievement as that available to her sighted colleagues. Accordingly, she has been subjected to disability discrimination as defined under Title II of the ADA. *See* 28 C.F.R. § 35.130(b)(1)(i – iii).

65.     The Board is utilizing methods of administration that have the effect of discriminating against Dr. Bartleson in violation of  Title II of the ADA, 42 U.S.C. § 12132. *See* 28 C.F.R. § 35.130(b)(3)(i).

### Failure to Modify Policies, Practices and Procedures

66.     Dr. Bartleson has been, and continues to be, excluded from and denied participation in the services, programs, and activities available to other MDCPS employees and community members.

67.     Adopting and implementing a policy to acquire, maintain, and use accessible computer programs and online applications and platforms is reasonable and necessary to ensure equal access to MDCPS programs, services and activities by Dr. Bartleson and other qualified people with vision disabilities.

68.     The Board's failure to make reasonable modifications to its policies, practices and procedure for procuring, maintaining, and using accessible technology is discriminatory in violation of Title II of the ADA. *See* 42 U.S.C. 12132; 28 C.F.R. § 35.130(b)(7)(i).

### Failure to Provide Effective Communication

69.     Because the Board failed to develop, procure, maintain or use computer programs and online applications and platforms that are compatible with screen readers, information regarding student information, employment benefits, professional evaluations, job vacancies, and promotional opportunities are not effectively communicated to Dr. Bartleson.

70.     Accessible electronic and information technology is an auxiliary aid or service under Title II of the ADA. *See* 28 C.F.R. § 35.104.

71.     By failing to take appropriate steps to furnish appropriate auxiliary aids and services that are necessary to afford Dr. Bartleson effective communication, MDCPS has denied Dr. Bartleson effective communication, MDCPD has denied Dr. Bartleson an equal opportunity to participate in, and enjoy the benefits of, MDCPS employment and advancement, and the Board violated and continues to violate Title II of the ADA. *See* 28 C.F.R. § 35.160(a),(b)(1).

### Plaintiff Suffers Damages

72.     As a direct and proximate result of MDCPS continuous discrimination on the basis of disability, the Plaintiff suffered actual damages, mental anguish and emotional distress, loss of enjoyment of life, and other non-pecuniary losses.

73.    The acts of MDCPS were in deliberate indifference, reckless disregard, intentionally done, and/or have had an adverse impact.

WHEREFORE, Plaintiff, Janice Bartleson, requests the judgment of the Court against Defendant, Miami-Dade County School Board, as follows:

A)    Find and hold that Plaintiff, Janice A. Bartleson, was discriminated against on the basis of her disability by the Miami-Dade County School Board's failure to develop, procure, maintain, and use technology that is accessible to Dr. Bartleson, and thus provide her with effective communication and an equal opportunity to participate in, and enjoy the benefits of MDCPS employment and advancement;

B)    Find and hold that Plaintiff has suffered from Defendant's acts of discrimination, on the basis of disability, in violation of Title II of the Americans with Disabilities Act;

C)    Find and hold that Defendant's acts of discrimination were done with deliberate indifference to her federally protected rights as a person with a disability, and award reasonable compensatory damages,

D)    Order that Defendant modify the information technology used by Defendant to make them fully accessible, or to procure accessible information technology;

E)    Award the Plaintiff her attorney's fees, including litigation expenses, and the cost of this action; and

F)    Grant such other and further relief as this Court deems just and proper.

## COUNT II

## (VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT)

### Using Methods of Administration That Have the Effect of Discrimination

74.    Plaintiff, Dr. Bartleson re-alleges and incorporates herein paragraphs one though 60, as if stated herein.

75.    Dr. Bartleson is a qualified individual with a disability subject to protection under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

76.    The Board is a local educational agency, *see* § 794(b)(2)(B), that receives federal funds.

77.    The Board directly and through contractual arrangements develops, procures, maintains and uses inaccessible computer programs, and online applications and platforms.

78.    Because of the Board's development, procurement, maintenance and use of technology that is incompatible with screen readers and thus inaccessible to Dr. Bartleson, Dr. Bartleson has been denied the opportunity to participate in or gain the same benefit from certain aids, benefits, and services that are available to other MDCPS employees.  She has been denied opportunities for professional development and advancement that are available to her sighted peers, and has not been afforded an equal opportunity to gain the same benefit or reach the same level of achievement as that available to her colleagues.  Accordingly, she has been subjected to disability discrimination as defined under the Rehabilitation Act.  *See* 28 C.F.R. § 41.51(b)(1)(i-iii, vii)

79.    The Board utilizes criteria and methods of administration that have the effect of subjecting Dr. Bartleson to discrimination on the basis of disability. See 28 C.F.R. § 41.51(b)(3)(i).

80.    The Board is utilizing methods of administration that have a disparate impact on Dr. Bartleson, and thus the Board has violated Section 504 of the Rehabilitation Act.

### Failure to Modify Policies, Practices and Procedures

81.     Dr. Bartleson has been, and continues to be, excluded from and denied participation in the services, programs, and activities available to other MDCPS employees and community members.

82.     Adopting and implementing a policy to acquire, maintain, and use accessible computer programs and online applications and platforms is reasonable and necessary to ensure equal and meaningful access to MDCPS programs, services and activities by Dr. Bartleson and other qualified people with vision disabilities.

83.     The Board's failure to make reasonable modifications to its policies, practices and procedure for procuring, maintaining, and using accessible technology is discriminatory in violation of Section 504 of the Rehabilitation Act.

### Failure to Take Steps to Make Communication Available

84.     Because the Board failed to adopt, implement or enforce accessibility criteria into its development, procurement and technology policies and practices, information regarding student information, employment benefits, professional evaluations, job vacancies, and promotional opportunities were not communicated to Dr. Bartleson.

85.     Accessible electronic information technology is an auxiliary aid or service under Section 504 of the Rehabilitation Act.

86.     By failing to take appropriate steps to ensure that communications with Dr. Bartleson are effective, the Board violated and continues to violate Section 504 of the Rehabilitation Act. *See* 28 C.F.R. § 41.51(e).

**Plaintiff Suffers Damages**

87.     As a direct and proximate result of MDCPS continuous discrimination on the basis of disability, the Plaintiff suffered actual damages, mental anguish and emotional distress, loss of enjoyment of life, and other non-pecuniary losses.

88.     The acts of MDCPS were in deliberate indifference, reckless disregard, intentionally done, and/or have had an adverse impact.

WHEREFORE, Plaintiff, Janice Bartleson, requests the judgment of the Court against Defendant, Miami-Dade County School Board, as follows:

A)     Find and hold that Plaintiff, Janice Bartleson, was discriminated against on the basis of her disability by the Miami-Dade County School Board's failure to develop, procure, maintain, and use technology that is accessible to Dr. Bartleson, and thus provide her with effective communication and an equal opportunity to participate in, and enjoy the benefits of MDCPS employment and advancement;

B)     Find and hold that Plaintiff has suffered from Defendant's acts of discrimination, on the basis of disability, in violation of Section 504 of the Rehabilitation Act;

C)     Find and hold that Defendant's acts of discrimination were done with deliberate indifference to her federally protected rights as a person with a disability, and award reasonable compensatory damages;

D)     Order that Defendant modify the information technology used by Defendant to make them fully accessible, or to procure accessible information technology;

E)     Award the Plaintiff her attorney's fees, including litigation expenses, and the cost of this action; and

F)     Grant such other and further relief as this Court deems just and proper.

## COUNT III

### (VIOLATION OF TITLE I OF THE ADA)

### Discrimination in Conditions and Privileges of Employment

89.     Plaintiff, Dr. Bartleson re-alleges and incorporates herein paragraphs one through 60, as if stated herein.

90.     Dr. Bartleson has a disability and is qualified to perform the essential functions of her job.

91.     Dr. Bartleson is an employee of the Board. 42 U.S.C. §12111(4).

92.     The Board has more than 15 employees and thus constitutes an employer under Title I of the ADA. 42 U.S.C. § 12111(2), (5)(A).

93.     Dr. Bartleson has exhausted her administrative remedies.

94.     The opportunity for access to the information needed to perform one's job, and the opportunity for meaningful professional development, and advancement are terms, conditions and privileges of MDCPS employment.

95.     Because of the Board's development, procurement, maintenance, and use of technology that is incompatible with screen readers and thus inaccessible to Dr. Bartleson, the Board has discriminated against Dr. Bartleson on the basis of her disability in the terms, conditions and privileges of employment, and thus has violated Title I of the ADA. 42 U.S.C. § 12112(a) and 12112(b)(2).

96.     Because of the Board's development, procurement, maintenance, and use of technology that is incompatible with screen readers and thus inaccessible to Dr. Bartleson, the Board has utilized methods of administration that have the effect of discrimination on the basis of disability and thus has violated Title I of the ADA.  42 U.S.C. § 12112(b)(3)(A).

97.     As a direct and proximate result of MDCPS' continuous discrimination on the basis of disability, the Plaintiff suffered actual damages, mental anguish and emotional distress, loss of enjoyment of life, and other non-pecuniary losses.

98.     The acts of MDCPS were in deliberate indifference, reckless disregard and/or intentionally done.

WHEREFORE, Plaintiff, Janice Bartleson, requests the judgment of the Court against Defendant, Miami-Dade County School Board, as follows:

A)      Find and hold that Plaintiff, Janice Bartleson, was discriminated against on the basis of her disability by the Miami-Dade County School Board's discrimination in terms and conditions of her employment;

B)      Find and hold that Plaintiff, Janice Bartleson, was discriminated against on the basis of her disability by the Miami-Dade County School Board's methods and administration in procuring its information technology;

C)      Find and hold that Plaintiff has suffered from Defendant's acts of discrimination, on the basis of disability, in violation Title I of the Americans with Disabilities Act;

D)      Order that Defendant modify the information technology used by Defendant to make them fully accessible, or to procure accessible information technology;

E)      Award the Plaintiff her compensatory damages, attorney's fees, including litigation expenses, and the cost of this action; and

F)      Grant such other and further relief as this Court deems just and proper.

## COUNT IV

### (VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT)

99.     Plaintiff, Dr. Bartleson re-alleges and incorporates herein paragraphs one through 60, as if stated herein.

100.     The Board is an employer subject to the nondiscrimination provisions of the Florida Civil Rights Act. Fla. Stat. § 760.02(7).

101.     Dr. Bartleson is a person with a disability and qualified employee of the Board.

102.     By developing, procuring, maintaining or using computer programs and online applications that are not compatible with screen readers and therefore not accessible to Dr. Bartleson, the Board has deprived Dr. Bartleson of employment opportunities and adversely affected her status as an employee. Dr. Bartleson's ability to perform her job, develop professionally, and explore and apply for advancement opportunities are limited on the basis of disability.

103.     Because the Board has failed to take adequate action to adopt, implement, and enforce accessibility criteria to ensure that its policies and practices do not limit or adversely affect Dr. Bartleson's status and opportunities, the Board has engaged in unlawful employment practices prohibited by the Florida Civil Rights Act. *See* Fla. Stat. § 760.10(1)(b).

104.     The acts of MDCPS were in deliberate indifference, reckless disregard and/or intentionally done.

105.     Dr. Bartleson has exhausted her administrative remedies.  Fla. Stat. § 760.11(1).

WHEREFORE, Plaintiff, Janice Bartleson, requests the judgment of the Court against Defendant, Miami-Dade County School Board, as follows:

A)    Find and hold that Plaintiff, Janice Bartleson, was discriminated against on the basis of her disability by the Miami-Dade County School Board's failure to develop, procure, maintain, and use technology that is accessible to Dr. Bartleson, and thus provide her with effective communication and an equal opportunity to participate in, and enjoy the benefits of MDCPS employment and advancement;

B)    Find and hold that Plaintiff has suffered from Defendant's acts of discrimination, on the basis of disability, in violation of the Florida Civil Rights Act;

C)    Find and hold that Defendant's acts of discrimination were done with deliberate indifference to her rights as a person with a disability, and award reasonable compensatory damages;

D)    Order that Defendant modify the information technology used by Defendant to make them fully accessible, or to procure accessible information technology;

E)    Award the Plaintiff her attorney's fees, including litigation expenses, and the cost of this action; and

F)    Grant such other and further relief as this Court deems just and proper.

## COUNT V

## (VIOLATION OF FLORIDA'S EDUCATIONAL EQUITY ACT)

106.    Plaintiff, Dr. Bartleson re-alleges and incorporates herein paragraphs one through 60, as if stated herein.

107.    Dr. Bartleson is an employee with a disability covered by the Florida Educational Equity Act.

108.    The Board is a K-12 educational program that receives federal and state assistance. *See* F.S.A. Const. Art. IX § 4; Fla. Stat. § 1001.32.

*Disability Independence Group, Inc. * 2990 Southwest 35th Avenue * Miami, FL 33133*

109.    Dr. Bartleson has been excluded from participation in, and denied the benefits of, her employment in violation of the Florida Educational Equity Act. Fla. Stat. § 1000.05(2)(a).

110.    Because of the Board's development, procurement, maintenance and use of technology that is incompatible with screen readers and thus inaccessible to Dr. Bartleson, she has been denied equal employment opportunities because of her disability. *See* Fla. Admin. Code § 6A-19.001(3), (4).

111.    By refusing to embrace mainstream accessibility and utilizing ineffective accommodations as work-arounds, the Board is providing an unnecessarily separate educational work environment to Dr. Bartleson. *See* Fla. Admin. Code § 6A-19.001(4)(a)4.

112.    The Board has entered into contractual arrangements and has utilized administrative methods which have the effect of subjecting Dr. Bartleson to discrimination. *See* Fla. Admin. Code § 6A-19.001(4)(a)5.

113.    By failing to adopt, implement or enforce accessibility criteria through its development, procurement and technology policies and practices, the Board is applying policies and practices that adversely affect a qualified employee. *See* Fla. Admin. Code §6 A-19.001(4)(a)6.

114.    The acts of MDCPS were in deliberate indifference, reckless disregard and/or intentionally done.

WHEREFORE, Plaintiff, Janice Bartleson, requests the judgment of the Court against Defendant, Miami-Dade County School Board, as follows:

A)    Find and hold that Plaintiff, Janice Bartleson, was discriminated against on the basis of her disability by the Miami-Dade County School Board's failure to develop, procure, maintain, and use technology that is accessible to Dr. Bartleson,

and thus provide her with effective communication and an equal opportunity to participate in, and enjoy the benefits of MDCPS employment and advancement;

B)   Find and hold that Plaintiff has suffered from Defendant's acts of discrimination, on the basis of disability, in violation of the Florida Educational Equity Act;

C)   Find and hold that Defendant's acts of discrimination were done with deliberate indifference to her federally protected rights as a person with a disability, and award reasonable compensatory damages;

D)   Order that Defendant modify the information technology used by Defendant to make them fully accessible, or to procure accessible information technology;

E)   Award the Plaintiff her attorney's fees, including litigation expenses, and the cost of this action; and

F)   Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial.

Respectfully submitted this 23rd day of April, 2018.

By:     *s/ Matthew W. Dietz*
        Matthew W. Dietz, Esq.
        Fla. Bar No. 0084905
        Disability Independence Group, Inc.
        2990 SW 35th Avenue
        Miami, FL  33133
        T: (305) 669-2822
        F: (305) 442-4181
        mdietz@justdigit.org
        lgoodman@justdigit.org
        aa@justdigit.org

Sharon Krevor-Weisbaum (MD. Bar No. 04773)
*(Applying for Pro Hac Vice Admission)*
Chelsea Crawford (MD. Bar No. 19155)
*(Applying for Pro Hac Vice Admission)*
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland  21202
T: (410) 962-1030
F: (410) 385-0869
skw@browngold.com
ccrawford@browngold.com

*Counsel for Janice A. Bartleson*